**Dee SPICKNALL, Appellant,**

**v.**

**PANHANDLE STATE BANK OF BORGER,**
Texas, et al., Appellees.

No. 6390.

Court of Civil Appeals of Texas.

Amarillo.

March 15, 1954.

Leigh Fischer, Tulsa, Okl., for appellant.

Piper, Gassaway & Allen, Borger, for appellees.

PITTS, Chief Justice.

In this suit appellant, Dee Spicknall, sued for damages, alleging as a party plaintiff the withholding from him of a second or junior chattel mortgage by appellee, Eugene E. Piper, acting for himself and as agent and attorney for appellee, Panhandle State Bank of Borger, Texas, both as party defendants, until the property described in the said mortgage had been sold to satisfy the first or prior mortgage lien, all of which is denied by appellees. Appellant contends that the suit is one in the nature of conversion, yet he makes no claim of any conversion of the property described in the mortgage but charges only as a basis for recovery the conversion of the mortgage or instrument itself, which is mere evidence of a pre-existing debt secured by a second mortgage. By stipulation of the parties, the second purchaser of the property previously sold to satisfy the first mortgage lien, A. S. Megert, was dismissed from the suit as a party defendant and as an innocent purchaser of the property in question.

The case was tried to a jury which returned an instructed verdict favorable to appellees under the direction of the trial court after appellant had presented his evidence. In doing so the trial court sustained a motion of appellees for such a verdict on the alleged grounds that appellant had wholly failed to discharge the burden of proof in an attempt to make out his alleged cause of action in his failure to show any delivery of the chattel mortgage, in his failure to show any debt or note in support of a debt, without which there can be no lien, in his failure to show wherein appellees owed any duty to appellant or that appellee Piper was agent of appellee bank in any of the transactions or that the bank had any actual or constructive notice of the existence of appellant's alleged debt or second lien.

Appellant has perfected an appeal and presents two points of error endeavoring to attack the trial court's judgment. But all of his authorities cited concerned alleged losses sustained by reason of wrongful appropriation or conversion of property covered by a mortgage lien and not a mere withholding of an evidentiary instrument showing a second mortgage lien on certain described property that was delivered to the first mortgagee in satisfaction of the first and superior chattel mortgage lien thereon as was shown to be the facts in the case at bar. According to the principal authorities cited by appellant, a mortgagee's suit for conversion contemplates the conversion of the property described in the mortgage and not a conversion of the instrument evidencing the mortgage lien. 9 Tex.Jur. 172–173, Sec. 72, and 212, Sec. 103. In the case at bar appellant seeks damages for conversion but seems to contend only that the instrument evidencing the mortgage lien was withheld from him by appellees in such manner as to constitute conversion.

The record conclusively reveals that appellee, Panhandle State Bank of Borger, Texas, held the first and superior mortgage lien on one six-room house located on Lot 1, Block 12, of the North Hills Addition to the City of Borger, Hutchinson County, Texas, by reason of a mortgage executed by R. L. Rains and wife Ola Mae Rains, the owners of the said house, on August 17,

1950, to secure a debt in the sum of $3,120 and that the said mortgage was filed for record in the County Clerk's office of the said County on August 19, 1950; that R. L. Rains and wife executed the second mortgage covering the same property to appellant thereafter on February 14, 1951, purporting to secure a debt in the sum of $800, but the said mortgage was not delivered to appellant until sometime during the month of October, 1951, after the property described in both mortgages had been conveyed by R. L. Rains on September 5, 1951, to appellee Panhandle State Bank of Borger in satisfaction of the mortgagor's indebtedness shown therein and thereafter conveyed by the said bank on September 21, 1951, to A. S. Megert, without the bank or Megert either knowing anything about appellant's claim of a second mortgage lien. The bank did not foreclose its mortgage lien but accepted conveyance from the mortgagor to satisfy his indebtedness shown in the mortgage. Consequently the second mortgage upon which appellant seeks to base his recovery, although executed by Rains and wife on February 14, 1951, was not delivered to appellant by Rains' agent until some weeks after the property therein described had been sold to the first mortgagee to satisfy the first debt and the same had likewise been thereafter sold by the first mortgagee to another before the delivery of appellant's second mortgage was made to him.

The record, likewise reveals that R. L. Rains and wife lived in Abilene, Texas, but owned several houses in Borger; that Rains employed L. C. Myers by written contract as his real estate agent to sell the said houses and receive a 5% commission for his services; that Rains' agent, L. C. Myers, employed Eugene E. Piper, a practicing attorney, to draw the necessary legal papers for the sale and transfer of the said houses and to give such legal advice as may be needed in connection therewith; that Rains knew about Piper's services for he wrote Piper a letter on March 3, 1951, authorizing Piper to settle a judgment so one of the said houses could be sold and Rains also later wrote Piper a letter on October 14, 1951,

instructing Piper to deliver to appellant his second mortgage which is the basis of this suit. The record further reveals that Rains sent the second mortgage here involved to L. C. Myers when the same was executed but failed to give Myers instructions about delivering the same to appellant. How or when the said second mortgage came into the possession of Piper is not shown but Piper was then acting as attorney for Myers and Rains with the knowledge of both of them. Rains intended for the second mortgage to be delivered to appellant soon after it was executed but he did not instruct his Borger agents to deliver the same to appellant until after he had sold the house therein described to the first mortgagee in satisfaction of the debt shown in the first mortgage. Soon after Rains directed Piper to deliver the second mortgage to appellant, such was done but the property therein described had already been sold to satisfy the debt in the first mortgage.

Appellant charges that appellee Piper was attorney and agent for appellee Panhandle State Bank and that both appellees are liable to him for conversion by reason of his second mortgage being withheld from him until after the property described in his mortgage had been sold. However, the record reflects that appellee Piper was subsequently attorney for appellee Panhandle State Bank but that he was not the bank's agent or attorney who handled the matter of preparing the first mortgage executed to the bank by Rains or in handling the sale later made of the property described therein. Other attorneys handled both of these transactions for the bank. Piper became attorney for the bank thereafter upon the death of the bank's former attorney. The evidence reveals that appellee Panhandle State Bank did not know of the existence of appellant's subsequent mortgage and that the said bank did not employ appellee Piper to handle any of the matters in connection with the acquisition or the sale of the mortgaged house. Appellant testified that he talked with somebody in the bank about his mortgage but he did not know who it was. Such indefinite testimony could not raise an issue concern-

ing actual knowledge and no constructive knowledge could be available as appellant's second mortgage was not recorded until more than a year after the property had been transferred to the bank and thereafter sold to another. Piper was attorney and agent for Myers and Rains in the handling of the transactions and not attorney and agent for appellee bank. Assuming, however, that Piper was then attorney and agent for the bank in handling other matters, the rule is well established that knowledge of or notice to an agent will be imputed to the principal only where the agent acquires his knowledge in the transactions of his principal's business there involved. Scarborough v. Bradley, Tex.Civ.App., 256 S.W. 349; Michaelis v. Nance, Tex.Civ.App., 184 S.W. 785; Merrill v. Southwestern Telegraph & Telephone Co., 31 Tex.Civ.App. 614, 73 S.W. 422; Lane v. De Bode, 29 Tex.Civ. App. 602, 69 S.W. 437; Taylor v. Taylor, 88 Tex. 47, 29 S.W. 1057. Piper was attorney in the transaction for Rains and Myers, to whom he owed the highest degree of good faith, and owed no duty to appellant to deliver the mortgage to him until his own clients instructed him on or about October 16, 1951, to deliver the second mortgage to appellant, which was soon thereafter so delivered. Traders & General Ins. Co. v. Keith, Tex.Civ.App., 107 S.W;2d 710.

■ Appellant had the burden of proving the necessary elements of his alleged cause of action, particularly the existence of a valid mortgage, ownership thereof, conversion and damages as a result thereof. Citizens' Loan Inv. Co. v. Young, Tex.Civ.App., 247 S.W. 662. He proved the execution of a second mortgage and the delivery of the same by the mortgagor, R. L. Rains, to his agent, L. C. Myers, without giving any instructions then for delivery of the same to appellant; that the mortgage was not delivered to appellant until after the property therein described had been sold to satisfy the first mortgage lien. A delivery in some form of a chattel

mortgage is essential to the validity of such instrument. Whitaker v. Sanders, Tex.Civ. App., 52 S.W. 638, and Whitaker v. Sanders & Samuels, Tex.Civ.App., 223 S.W. 256. Hence, no valid second mortgage existed in any event until the same was delivered to appellant which delivery was made after the property therein described had been sold to satisfy the first mortgage lien and then thereafter resold by the first mortgagee to another. Consequently there existed no valid second mortgage lien on the property at the time it was twice sold. There having been no valid second mortgage and no valid lien, there could have been no conversion as a basis for damages. Jones v. Hess, Tex. Civ.App., 48 S.W. 46; Gulf, C. & S. F. R. Co. v. Pratt, Tex.Civ.App., 183 S.W. 103. Appellant likewise failed to produce a note as evidence of a debt and testified that he never received any note and knew nothing about where any note was, if any was executed, and that he no longer considered Rains liable to him for the debt. There can be no lien if there be no enforceable debt as a basis therefor. 9 Tex.Jur. 112, Sec. 28.

■ While appellee Panhandle State Bank was not a subsequent lien holder but was a superior lien holder to appellant, yet the bank had no notice in any event of appellant's claims. It was not therefore liable to appellant in any event. First Nat. Bank of Navasota v. Todd, Tex.Com.App., 231 S.W. 322, and Article 5490, Vernon's Civil Statutes, as amended.

Under the record presented and the authorities cited and many others, it is our opinion that the trial court was justified in directing a verdict and rendering a "take nothing" judgment thereon. Its judgment is therefore affirmed. Hobart Mfg. Co. v. Joyce, Tex.Civ.App., 22 S.W.2d 955; Kelly v. Pelt, Tex.Civ.App., 220 S.W. 199; Gulf Production Co. v. Trans-Bay Oil Co., Tex. Civ.App., 297 S.W. 634; Maryland Casualty Co. v. Morua, Tex.Civ.App., 180 S.W. 2d 194.